PERCY C. SIMPSON, ·ADMINISTRATOR AD PROSEQUEN-
DUM OF ALBERT G. SIMPSON, DECEASED, PLAINTIFF,
v. JERSEY CENTRAL POWER AND LIGHT COMPANY, A
CORPORATION, DEFENDANT.

Submitted January 28, 1927—Decided June 27, 1927.

Negligence—Death—Contact With High Voltage Lighting Wire
—Evidence of Negligence of Owner in Failing to Keep Pole
Carrying Wire in Good Condition—Evidence of Ownership—
No Evidence of Contributory Negligence Per Se—Verdict of
$8,000 Held Excessive and Reduced to $6,000 or New Trial
Awarded.

On defendant's rule to show cause.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the rule, *Frank G. Turner.*

*Contra, Howe & Davis.*

PER CURIAM.

This case is before this court on a defendant's rule to show
cause. It was a death case. The plaintiff recovered a judg-
ment against the defendant for $8,000. The plaintiff's intes-
tate, Albert G. Simpson, was a boy of sixteen years of age.
Early in the morning of August 1st, 1925, he accompanied
William Kauffman, the driver of a bread delivery truck
owned by the Williams Baking Company, on a trip from
Newark to Keansburg in the county of Monmouth. The
bread had been delivered at Keansburg. The truck was on
its return trip to Newark. Besides Simpson and the driver, a
Mr. and Mrs. Demeter, with some of their household furnish-
ings, were being brought from Keansburg to Newark. A
heavy rain storm had taken place during the preceding eve-
ning. As the truck was proceeding along Thompson avenue
in the township of Middletown, Simpson cried out, "The pole

is falling." A pole suddenly fell in front of the truck. The truck was stopped. Simpson got off of the truck with the intention of assisting the driver to back up the truck. The night was dark. Simpson was heard to cry for help. Kauffman could not see him. After he had backed the car the lights of the car showed Simpson lying on a lawn beside the road with a wire curled around his leg. He was unconscious. A call for help was made. Neighbors were attracted by the call. One, Mr. Bleiler, who lived directly opposite where the accident took place, was an expert electrician and extricated Simpson from the wire. Simpson could not, however, be resuscitated. His death was due to the electric current which was carried through the wire into his body.

Bleiler testified that the wire came off the top point of the pole; that it was a high tension No. 4 x 6 wire; that the insulation was gone from the wire for a distance of about six inches; that this was the portion of the wire which stuck into the boy's leg; that it was such a wire as is used to supply light through a transformer; that the pole which fell was rotten at its base; that an inspection, if it had been made, of the pole would have shown that it was in a rotten condition; that on this particular pole an unusual strain was put due to the fact that it was not on a straight line between the poles on each side of it; that where a pole is out of line with others a back guide should be put upon it, and there was no back guide for this pole.

It was also shown that the defendant company supplied electric current for lights in the neighborhood where the accident occurred. There was no evidence that upon the pole which was erected in place of the fallen pole the letters J. C. P. & L. Co., the initials of the corporate name of the defendant, were painted in black. Simpson, at the time he was killed, was working for the Castles Ice Cream Company. He was earning $30 per week. He gave this to his mother. He was a steady worker and of good habits. The cost of his board and clothing was about $15 per week and he was allowed some two or three dollars per week spending money.

Under the rule to show cause the defendant argues—first, that the trial court erred in refusing to direct a judgment of nonsuit. The grounds of this motion were several. It was urged that there was no proof that the defendant company owned the poles or used the wires in transmitting electric current. The testimony which has been mentioned was sufficient from which ownership of the poles and operation of the wires could be inferred. It was also urged that the company had no knowledge of the condition of the pole. If the pole was in such a condition as testified to by Mr. Bleiler the defendant should have had knowledge of its defective condition as it had evidently existed for some time. The proof of the accident also brought the case within the doctrine of *res ipsa loquitur*. *Newark, &c., Power Co.* v. *Ruddy*, 62 *N. J. L.* 505.

While the brief alleges six grounds, the grounds which have been considered are repeated in the fourth, fifth and sixth subdivisions of the argument upon this point. We think there was ample proof to justify the refusal of the trial court to nonsuit the plaintiff.

The second point argued for the defendant is that the decedent was guilty of contributory negligence and that a nonsuit should have been entered on this ground. The evidence clearly presented a case where the contributory negligence of the decedent was a question to be submitted to the jury. There was nothing in that which the decedent did at the time of the accident which amounted to contributory negligence *per se*.

The third point argued in behalf of the defendant is that the trial court erroneously charged the jury as follows:

"This boy came in contact with a wire, and there appears to have been but one broken. It is for you to say whether or not from those facts the death occurred from contact with a broken live electric high tension wire."

There was testimony that there was but one wire broken and that there passed through this wire a high tension electric current. We see no error in this comment of the trial judge.

The fourth point deals with that portion of the charge in which the court said it was for the jury to determine whether or not it was the defendant company that was in the operation and control of the poles and line. There were facts testified to and which have been referred to from which the jury could find that the defendant was in the operation and control of the wire and high tension line causing the accident. The evidence presented a question of fact for the determination of the jury. The court did not err in leaving this question for the jury.

The next point is that the trial judge erred in charging as follows: "Reasonable care means great care; so that the care required to maintain the line and the poles upon which they were carried means great care." This statement of the law is sanctioned by the charge in the case of *New York and New Jersey Telephone Co.* v. *Bennett*, 62 *N. J. L.* 742, in which the Court of Errors and Appeals said: "One factor in the measure of reasonable care is the probable result of negligence. In the use of powerful electric current in the public streets, reasonable care is great care."

The defendant next criticizes the following portion of the court's charge:

"If the voltage was sufficient in those wires to destroy the life of a human being with whom they come in contact, it will be for you to say whether or not the current carried was a dangerous current and, if it was, it was the duty of the company to inspect and repair or replace any defective poles on which such wires are carried."

We find no exception to this part of the charge. It will, therefore, not be considered.

The seventh point argued by the defendant is that the trial court erroneously refused to direct a verdict in favor of the defendant. This presents the same question as was presented upon the motion to nonsuit. We have fully covered it and sustain the court's ruling in refusing to direct a verdict.

The final question argued in the defendant's brief is the excessiveness of the verdict. Had the deceased lived he would have been twenty-one years old in five years. It is always

problematical what a boy will do with his earnings when emancipated. We think the verdict of $8,000 is excessive. In *Hoar* v. *Public Service*, 4 *N. J. Mis. R.* 716 (not officially reported), a verdict of $4,500 for the death of a boy slightly under seventeen years of age was held to be excessive to the extent of $1,500. In this case the boy was indolent and lacked ambition. The deceased in the present case appears to have been ambitious and worked hard. If the plaintiff will consent to a reduction of the verdict to $6,000 the rule will be discharged, otherwise it will be made absolute.